UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENJAMIN HIGHTOWER,

        Plaintiff,

v.                                 Case No. 8:20-cv-01766-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.**    **Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 338-41). The Social Security Administration ("SSA") denied Plaintiff's claims both

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

initially and upon reconsideration (Tr. 195-212). Thereafter, Plaintiff requested an administrative hearing (Tr. 213-14). Per Plaintiff's request, the ALJ held a hearing on May 1, 2017 at which Plaintiff appeared and testified (Tr. 57-103). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 168-185). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council granted (Tr. 186-88, 277-82). Upon review, the Appeals Council vacated the ALJ's decision and remanded the case for a new hearing and resolution of several issues (Tr. 186-88). Upon remand, another administrative hearing was held on March 14, 2019 (Tr. 32-56). After the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denying Plaintiff's claim for benefits (Tr. 12-31). Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1967, claimed disability beginning November 15, 2014 (Tr. 338). Plaintiff obtained a high school education (Tr. 370). Plaintiff's past relevant work experience included work as a forklift driver or an industrial truck operator and as a delivery driver (Tr. 22). Plaintiff alleged disability due to his right knee, problem standing for a long period, diabetes, accelerated beating heart, and hypertension (Tr. 120, 140).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2016 and had not engaged in substantial gainful activity since November 15, 2014, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: osteoarthritis, arthritis, and arthralgia of the right knee, hypertension, tachycardia, and morbid obesity (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except with the following limitations:

> the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand for 3 hours in an 8-hour day; walk for 2 hours in an 8-hour day; sit for 6 hours in an 8-hour day; require a sit/stand option with an alternating interval of 30-60 minutes; occasionally push and pull with the upper extremities; occasionally climb ramps and stairs; no climbing of ladders and scaffolds; occasionally balance; frequently stoop; occasionally kneel; occasionally crouch; no crawling; constantly reach waist to chest with both arms; frequently reach above shoulder level with both arms; constantly handle, finger, and feel with both hands; occasionally work around extreme cold, extreme heat, wetness, humidity, vibration, pulmonary irritants, and moving mechanical parts; and no working around high exposed places

(Tr. 18-19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting

effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 18-19).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 22). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a ticket taker, toll collector, and ticket seller (Tr. 22-23). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 23).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520,

416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings,

no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by (1) failing to follow the mandate of the Appeals Council's remand order and (2) failing to properly assess Plaintiff's RFC by improperly weighing the medical opinion evidence, failing to sufficiently explain the changes to the RFC determination, and failing to properly consider Plaintiff's subjective complaints regarding his pain and limitations. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.   Appeals Council's Remand

Plaintiff argues that the ALJ failed to follow the mandate of the Appeals Council's remand order by issuing new findings, including obtaining new opinion evidence and reconsidering Plaintiff's RFC. Here, the Appeals Council's Order states:

> The hearing decision indicates the claimant is not disabled because there are other light jobs he can perform in the national economy (Hearing Decision, page 9). The claimant has an assessed residual functional capacity of light work, with additional limitations, including walking/standing four hours in an eight-hour workday (Finding 5). This additional limitation stems from the claimant's severe osteoarthritis of the knee (Exhibits B3F, page 3; BI0F, page 2). The vocational expert testified that an individual with the claimant's assessed residual functional capacity could not perform light work. The vocational expert provided sedentary jobs (Hearing Recording, 11:14:18 AM). Medical-Vocational rule 201.14 directs that a person of the claimant's age, education, and work experience would be disabled if limited to sedentary work (20 CFR Part 404, Subpart P, Appendix 2). Therefore, further consideration is warranted to determine if the claimant has transferrable skills from his past work to allow semi-skilled or skilled work and if there are other jobs in the national economy the claimant can perform.

> On remand, obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

> In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 187-88).

The SSA regulations provide that "the administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).[2] The ALJ complied with this remand instruction because when the Appeals Council vacated the ALJ's order, it did not preserve any portion of the ALJ's findings. Rather, the Appeals Council noted that upon remand, the ALJ's hypothetical questions to the VE "should reflect the specific capacity/limitations *established by the records as a whole*," not established by the previous RFC (Tr. 188) (emphasis added). The ALJ, therefore, was not precluded from reconsidering Plaintiff's RFC. Further, upon remand, the vocational expert testified that Plaintiff did not have transferable skills (Tr. 54). The ALJ assessed Plaintiff's RFC and asked the vocational expert to identify jobs someone with Plaintiff's RFC and vocational factors could perform (Tr. 49-50). The VE testified that Plaintiff could perform jobs in the national economy (Tr. 50-52). The VE did not testify that Plaintiff was limited to sedentary work, although he acknowledged that if an individual with Plaintiff's past work was limited to sedentary work, that individual would not have

---

[2] The Commissioner relies on 20 C.F.R. § 404.983, however, § 404.983 applies to decisions remanded by a federal court, whereas § 404.977 applies to decisions remanded by the Appeals Council.

transferable skills to sedentary work (Tr. 54). This testimony differs from the VE's testimony at the 2017 hearing who testified that the RFC, which included a standing/walking four-hour limitation would "basically require" sedentary jobs (Tr. 94). The VE's testimony at the 2017 hearing created the issue later addressed by the Appeals Council when it vacated the ALJ's decision because "Medical-Vocational rule 201.14 directs that a person of the claimant's age, education, and work experience would be disabled if limited to sedentary work" (Tr. 187). On remand, the VE's testimony no longer created this conflict between the RFC, the types of jobs proposed, and rule 201.14 because the VE did not testify that an individual of Plaintiff's age, education, work experience, and RFC would be limited to sedentary work.

Plaintiff cites to *Warren-Ward v. Astrue*, in support of his argument that an ALJ's failure to perform a specific mandate from the Appeals Council merits remand, as opposed to Appeals Council orders providing than an ALJ may take an action "as needed." No. CIVA 1:07CV811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10, 2008). However, although the Appeals Council mandated the ALJ to consider the issue of transferable skills and the vocational testimony, the Appeals Council's order also directed the ALJ to "take any further action needed to complete the administrative record and issue a new decision" (Tr. 187-88). Therefore, the ALJ was not bound by any previous findings and acted within his authority to issue a new decision.

### B.    RFC

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors

concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Plaintiff contends that the ALJ failed to properly assess his RFC. Specifically, Plaintiff argues that the ALJ failed to properly weigh the medical opinions of Dr. Lise Mungul and Dr. Eniola Owi, both state agency medical consultants. According to Plaintiff, the ALJ should not have granted "great weight" to Dr. Owi's opinion while only granting "some weight" to Dr. Mungul's opinion. Additionally, Plaintiff argues that the ALJ did not fully explain his reasons for not incorporating all of the limitations from Dr. Mungul's opinion into the new RFC. Finally, Plaintiff argues that the ALJ failed to properly evaluate his allegations of pain and limitations. The Court will address each argument in turn.[3]

### a. Medical Opinion

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179 (citation omitted). Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the

---

[3] Under Issue 3 of the Joint Memo Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to provide a sufficient explanation for finding that Plaintiff had an RFC with an increased capacity for exertional activity upon remand (Doc. 33, at 39). The Court will address this argument as part of its analysis of Plaintiff's second argument regarding medical opinion evidence.

claimant can still do despite the impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927.[4] In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, however, so long as the ALJ articulates a specific justification for the decision. *Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

---

[4] This regulation applies to claims filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. Claims filed on or after March 27, 2017 are governed by a new regulation applying a somewhat modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). Since Plaintiff filed his claim on May 5, 2015 (Tr. 338-41), the rules in 20 C.F.R. §§ 404.1527, 416.927 apply. Any other citations to the regulations refer to the regulations in effect on the date of the ALJ's decision on June 18, 2019 (*see* Tr. 12).

Plaintiff contends that the ALJ did not sufficiently provide a rationale for the weight afforded to the medical source opinions of Dr. Mungul and Dr. Owi. Plaintiff also argues that the ALJ failed to address his objections to Dr. Owi's medical opinion.

In evaluating Dr. Mungul's opinion, the ALJ found that "while more recent evidence supported greater limitations" Dr. Mungul's opinion had "some weight" (Tr. 21). Dr. Mungul reviewed the file in October 2015 and opined that Plaintiff could perform a reduced range of light exertion work with occasional climbing of ramps and stairs, occasional climbing of ladders, ropes, or scaffolds, and occasional kneeling (Tr. 147-49). The ALJ found that Dr. Mungul's opinion was consistent with the evidence available at the time, which confirmed osteoarthritis of the right knee, but Plaintiff did not require an assistive device to ambulate, exhibited full muscle strength of the bilateral upper and lower extremities, and had no muscle atrophy (Tr. 21). In fact, the ALJ incorporated the limitations found in Dr. Mungul's opinion to Plaintiff's RFC (Tr. 18-19). In line with Dr. Mungul's opinion, the ALJ found that Plaintiff was capable of performing light work with occasional climbing of ramps and stairs, and occasional kneeling (Tr. 18, 148). However, the ALJ gave Dr. Mungul's opinion "some weight" because the ALJ found that more recent evidence supported greater limitations (Tr. 21). For instance, the ALJ found that Plaintiff could not climb ladders and scaffolds and could never crawl (Tr. 18), while Dr. Mungul opined that Plaintiff could occasionally climb ladders, ropes, or scaffolds and his ability to crawl was unlimited (Tr. 148).

After the remand, Plaintiff saw Dr. Owi for a physical consultative examination (Tr. 840-851). Dr. Owi completed a medical source statement where she opined that Plaintiff could perform light exertion work but would require the ability to alternate positions from sitting to standing and vice versa (Tr. 843-48). Dr. Owi also opined that Plaintiff could never climb ladders or scaffolds (Tr. 846). In weighing the medical opinions of record, the ALJ stated:

> Overall, the undersigned gives this assessment great weight because it is both consistent with Dr. Owi's examination, as well as the evidence of record as a whole. Dr. Owi had the opportunity to both examine the claimant and review his medical records. As noted in the examination summary, the claimant had normal gait, normal extremity strength, and he was able to stand on heels and toes.

(Tr. 21). As the ALJ noted, Dr. Owi found that Plaintiff had a regular cardiovascular and pulmonary examination, normal strength in all extremities, a normal gait without assistive device, and the ability to get on and off the examination table without assistance (Tr. 21, 850). Additionally, Dr. Owi found that Plaintiff's right knee was enlarged but there was no effusion (Tr. 850). During Dr. Owi's examination, Plaintiff also reported tenderness to palpitation in his knee, but otherwise had normal strength and sensation in his extremities and was able to do one-legged stance with each leg (Tr. 850). Dr. Owi opined Plaintiff could perform a reduced range of light work, stand for 3 hours, walk for 2 hours, and sit for 6 hours in an 8-hour day; required the ability to alternate between sitting and standing in intervals of 30-60 minutes; could occasionally push and pull with the upper extremities, balance, kneel, crouch, and climb ramps and stairs; could not crawl or climb ladders or scaffolds; could frequently stoop and reach above the shoulders;

could reach waist to chest, hand, finger, and feel with both hands; and could occasionally work around hazards and environmental conditions (Tr. 843-48).

Plaintiff argues that in assigning great weight to Dr. Owi's opinion and altering the resulting RFC determination, the ALJ assessed fewer limitations than in the 2017 RFC although he stated that "more recent evidence supported greater limitations" than Dr. Mungul's opinion and the 2017 RFC (Tr. 21). The 2017 RFC limited Plaintiff to standing and walking for four hours in an eight-hour day (Tr. 174), while the 2019 RFC at issue here limited Plaintiff to standing for three hours and walking for two hours in an eight-hour day (Tr. 18-19). The 2019 RFC had greater limitations than the 2017 RFC. As explained above, the 2017 RFC limited Plaintiff to standing and walking for four hours in an eight-hour day (Tr. 174). Meanwhile, the 2019 RFC limited Plaintiff to standing for three hours and walking for two hours in an eight-hour day while also requiring a sit/stand option with an alternating interval of 30-60 minutes (Tr. 18-19). Plaintiff appears to argue that the 2019 RFC actually limited Plaintiff to walking and standing for five hours in an eight-hour day. However, by including the sit/stand option with alternating intervals of 30-60 minutes, Plaintiff was actually limited to standing and walking for a maximum of four hours altogether in an eight-hour workday. Thus, it is clear that the ALJ accorded Dr. Mungul's opinion some weight as he adopted some of Dr. Mungul's opinion, but accorded Dr. Owi's opinion great weight, as it supported greater limitations. The ALJ did not have to explain any discrepancy between the

opinions because the RFC contained greater limitations than originally assessed in 2017.

Additionally, Plaintiff argues that the ALJ improperly weighed Dr. Owi's medical opinion because she did not review every medical record in the file. However, as correctly cited by the Commissioner, while Dr. Owi may not have reviewed all of the evidence, the ALJ did. *See Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015) (holding that the ALJ properly granted weight to the opinions of two non-examining doctors even though they did not review the most recent medical records); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) ("Moreover, even if the non-examining doctor was unable to review all of Cooper's medical records before making her RFC determination, she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as Cooper's testimony."). The ALJ had access to the entire medical record, including Plaintiff's testimony, and could determine whether Dr. Owi's opinion was supported by and consistent with the evidence of record and thus, whether to afford the opinion great weight.

In fact, Dr. Owi's opinion was consistent with Plaintiff's medical records. For instance, on multiple occasions Plaintiff was found to not exhibit edema (Tr. 583, 613, 617, 625, 811, 820, 833), exhibited no muscle weakness in lower extremities (Tr. 549, 584), and had a normal range of motion (Tr. 598, 613, 617, 627, 811, 820, 833). Moreover, Dr. Owi was not the only provider that noted

Plaintiff could walk without an assistive device. Other providers noted that Plaintiff walked without an assistive device (Tr. 582). The ALJ noted that Plaintiff was advised that he needed a total knee replacement (Tr. 20). However, at the hearing, Plaintiff explained that he was advised that he should not receive a total knee replacement until he turned 60 years old (Tr. 45). It is worth noting that Plaintiff's evaluation which led to the recommendation to receive a total knee replacement occurred in September 2016 (Tr. 593). At the time of the recommendation, Plaintiff was approximately 49 and, according to Plaintiff, was advised to wait more than ten years before receiving a knee replacement. According to Plaintiff, he wore a knee brace and took Advil or 800 mg Ibuprofen for his knee pain (Tr. 44-45, 388, 423). Although Plaintiff's contention that there are references in the record regarding his antalgic gait and difficulty walking is accurate (*see* Tr. 627, 631, 635, 640, 656-57, 775), this Court is not in a position to reweigh the evidence or substitute its own judgment for that of the ALJ, even if it found that the evidence preponderates against the ALJ's decision. *See Winschel*, 631 F.3d at 1178 (citations omitted). The ALJ observed Plaintiff's medical history and the concerns noted by Plaintiff (Tr. 19-22). Notwithstanding, as previously discussed, the ALJ properly considered Dr. Mungul and Dr. Owi's opinions in the context of the record as a whole and the ALJ's conclusion that Dr. Mungul's opinion had some weight while Dr. Owi's opinion had great weight is supported by substantial evidence.

Finally, Plaintiff also argues that the ALJ failed to provide a meaningful response to Plaintiff's objections to Dr. Owi's examination. However, the ALJ

acknowledged Plaintiff's objections to Dr. Owi's opinion, noting that Plaintiff "submitted an objection" to Dr. Owi's opinion and that he "argues that the consultative examiner did not have the benefit of reviewing all the medical evidence of record, and the limitations assessed are inconsistent with the examination." (Tr. 15). In fact, the ALJ addressed Dr. Owi's opinion and the other medical evidence supporting his RFC determination. As noted above, the 2019 RFC contained more limitations than the 2017 RFC and the ALJ's assessment of the weight of the medical opinion evidence and RFC determination was supported by substantial evidence.

### b.  Subjective Complaints of Pain

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective complaints of knee pain and limitations. As an initial matter, Plaintiff's subjective complaints will not alone establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). The claimant has the burden of providing sufficient evidence to support allegations of disabling pain or other symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a). In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical

condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). If a claimant shows an underlying mental or physical impairment that could reasonably expected to produce the alleged subjective complaints, the Commissioner evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. In considering a claimant's subjective complaints, the ALJ may consider whether any inconsistencies exist in the evidence and the extent to which any conflicts exist between a claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by medical sources or other persons about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). If the ALJ discounts Plaintiff's testimony about subjective complaints after finding a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, he must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam)). A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote*, 67 F.3d at 1562 (citation omitted).

The ALJ properly discounted Plaintiff's subjective complaints of pain and limitations, and the ALJ's conclusion is supported by substantial evidence. The ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause his claimed symptoms, yet the intensity and persistence of Plaintiff's symptoms as he alleged them were inconsistent with medical evidence in the record (Tr. 19). The ALJ found that Plaintiff's statements about his impairments were not supported by the medical records and other evidence in the record (Tr. 19-20).

At the administrative hearing, Plaintiff testified that he could walk around "at least, maybe 30 to 45 minutes before it actually starts really hurting" (Tr. 37). Plaintiff also testified that he could stand for "maybe 20 to 30 minutes" before his knee "starts acting up" (Tr. 38). Plaintiff testified that if he sat for too long, his leg goes numb (Tr. 36). However, Plaintiff testified that if he sits on a pillow, he is more comfortable and can probably "work longer or sit longer without stopping or getting up" (Tr. 42).

As the ALJ noted, Plaintiff's physical examinations varied in their findings regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms (Tr. 19). On multiple occasions Plaintiff was found to not exhibit edema (Tr. 583, 613, 617, 625, 811, 820, 833), exhibited no muscle weakness in lower extremities (Tr. 549, 584), and a normal range of motion (Tr. 598, 613, 617, 627, 811, 820, 833). Additionally, Plaintiff could ambulate without assistive devices (Tr. 582-83, 850). Moreover, in his Supplemental Pain Questionnaire, Plaintiff wrote that he normally

took Advil for his pain and the doctor had prescribed 800 mg Ibuprofen (Tr. 388, 423). Plaintiff testified that he was told he needed a total knee replacement, however, he was advised to wait years before receiving one (Tr. 45). Although Plaintiff consistently reported knee pain, he received conservative treatment, including a knee brace (Tr. 46), over-the-counter and nonsteroidal anti-inflammatory drugs (Tr. 388, 423), and a referral for physical therapy (Tr. 774). In consideration of Plaintiff's impairments and the medical evidence, the ALJ limited Plaintiff to a reduced range of light exertion work with a sit/stand option with an alternating interval of 30-60 minutes (Tr. 21-22). Although Plaintiff's contention that there are references in the record regarding his antalgic gait, difficulty walking, and abnormal imagining is accurate (*see* Tr. 521-22, 599, 627, 631, 635, 640, 656-57, 775), this Court is not in a position to reweigh the evidence or substitute its own judgment for that of the ALJ, even if it found that the evidence preponderates against the ALJ's decision. *See Winschel*, 631 F.3d at 1178 (citations omitted). The ALJ properly considered the record as a whole and provided "explicit and adequate reasons" for discrediting Plaintiff's subjective complaints and these findings are supported by substantial evidence. *Dyer*, 395 F.3d at 1210.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of March, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge


cc:  Counsel of Record